IN THE MATTER OF LAFAYETTE BANK AND TRUST COMPANY OF FAYETTEVILLE, N. C.

(Filed 6 June, 1930.)

**Banks and Banking J b—Upon sale of property of insolvent bank the purchase price must be paid to the Corporation Commission.**

Where the Corporation Commission takes possession of the assets of an insolvent bank under the provisions of 3 C. S., 218(c), it is a statutory receiver and it is required by statute to collect the assets of the bank and to distribute them to the creditors and depositors, and the court having jurisdiction is without power to authorize the sale of an insolvent bank's

property in bulk to purchasers under an agreement that the purchasers organize another bank and pay to it the purchase price for distribution to the creditors and depositors and thus relieve the Commission of its duty to collect and distribute the assets. As to whether the court might authorize the sale of the assets in bulk is not decided, though it would seem that under the statutory provision that he shall make such order as in his discretion will best serve the parties interested he has the power to authorize a sale in bulk, which would not be reviewable on appeal except on the ground of abuse of discretion.

APPEAL by the petitioner, the Corporation Commission of North Carolina, from order of *Sinclair, Resident Judge,* of the Superior Court for the Ninth Judicial District. Affirmed.

This is a proceeding begun and prosecuted under the provisions of C. S., 218(c), for the liquidation of the LaFayette Bank and Trust Company, an insolvent corporation organized under the laws of this State, and, prior to its insolvency, engaged in the banking business at Fayetteville, Cumberland County, North Carolina.

After the Corporation Commission had taken possession of the assets and business of said insolvent corporation, pursuant to the provisions of the statute, and after it had filed the inventory required by its provisions, and while it was engaged in the administration of the estate of said corporation, the said Commission filed its petition before the resident judge of the Superior Court for the Judicial District in which the place of business of said corporation is located, praying that the said judge make an order authorizing and empowering the said Commission to sell the assets of said insolvent banking corporation, then in its possession, upon the terms and conditions set out in said petition.

Upon the hearing of said petition, an order was made as follows:

"This cause coming on to be heard before his Honor, N. A. Sinclair, Resident Judge of the Ninth Judicial District, in which is located Cumberland County, and being heard upon the petition of the Corporation Commission, and the court finding as a fact:

First: That on 13 January, 1930, the Corporation Commission of the State of North Carolina took possession of the LaFayette Bank and Trust Company, of Fayetteville, North Carolina, under and by virtue of the provisions of section 218(c) of the Consolidated Statutes, and now has the assets of said bank in its hands for liquidation under the provisions of said act; and,

Second: That at the time the Corporation Commission took possession of the assets they totaled $572,307.70, with a total liability to depositors of $450,749.65, and a total of bills payable $2,238.55, which said liabilities are still outstanding and to be liquidated out of the assets which came into the hands of the Corporation Commission on 13 January, 1930; and,

Third: That interested parties in the city of Fayetteville propose to organize the LaFayette Bank and purchase in bulk the assets of the LaFayette Bank and Trust Company, and pay for said assets the sum set out in Exhibit A, attached to the petition, making said payments according to the terms of said exhibit; and,

Fourth: That the creditors, including depositors of said bank, those representing a total of $321,023.51, have signed the agreement attached to the petition and marked Exhibit A, and those representing $139,-726.12 have not signed said agreement attached to the petition and marked Exhibit A; and,

Fifth: That by the terms of the agreement the LaFayette Bank proposes to purchase in bulk from the Corporation Commission of ·the State of North Carolina the assets of the LaFayette Bank and Trust Company and pay the creditors of the LaFayette Bank and Trust Company seventy per cent in equal monthly installments of ten per cent, and thirty per cent in stock in the LaFayette Bank; and,

Sixth: That in addition to the stock to be purchased with thirty per cent of the deposits and claims of the LaFayette Bank and Trust Company, additional amount in cash is to be paid in for the capital stock of the LaFayette Bank so as to total $100,000 capital stock account; and,

Seventh: That the Corporation Commission, in accordance with the requirements of the Exhibit A, has approved the agreement and method employed by the LaFayette Bank in organizing and in proposing to purchase the assets of the LaFayette Bank and Trust Company; and,

Eighth: That the Corporation Commission recommends the approval of said sale and purchase according to the terms of the agreement and in accordance with the facts hereinbefore set out; and,

Ninth: That as to the creditors, including depositors of the LaFayette Bank and Trust Company who have not signed the agreement attached to the petition and marked Exhibit A, the sale of the assets and liquidation of the claims of the LaFayette Bank and Trust Company in a way and manner set out in the petition, including the exhibit attached thereto and marked Exhibit A, is to the best interest of the creditors of said bank, including the depositors and including those creditors and depositors who have failed to sign the agreement attached to the petition and marked Exhibit A; and,

Tenth: That in the opinion of the court the sale of the assets to the LaFayette Bank and the discharge by it of the claims of the creditors of the LaFayette Bank and Trust Company in the way and manner set out in the petition, including the agreement attached thereto and marked Exhibit A, will be to the benefit of the creditors, including the depositors of the LaFayette Bank and Trust Company, and will net to them a

greater or as great a return as would be possible in liquidation by the Corporation Commission; and,

Eleventh: That the creditors, including the depositors, are not parties to this action, it being an *ex parte* action to secure from the court approval of the sale of the assets of the LaFayette Bank and Trust Company in accordance with the terms hereinbefore set out, said creditors, including depositors not having been notified of the presentation of this petition and have not been served with summons or notice in the action pending in the Superior Court of Cumberland County under the provisions of section 218(c); and,

Twelfth: That the provisions of subsection 7 of 218(c) do not authorize and empower the sale in bulk of the assets of a banking institution taken possession of by the Corporation Commission for the purpose of liquidation under and by virtue of the provisions of section 218(c), Consolidated Statutes.

Now, therefore, the motion of the Corporation Commission for order approving the sale of the assets of the LaFayette Bank and Trust Company to the LaFayette Bank for the purpose of permitting the LaFayette Bank to discharge the claims or liabilities of the LaFayette Bank and Trust Company in accordance with the terms of the agreement attached to the petition is hereby denied.

N. A. SINCLAIR, *Judge,* etc."

Exhibit A, attached to the petition, and referred to in the order, is as follows:

"EXHIBIT A.

North Carolina—Cumberland County.

7 February, 1930.

For value received we, the undersigned, each for himself being depositor in the LaFayette Bank and Trust Company, hereby agree to purchase with thirty per cent of our deposits now in the said bank stock in the new bank to be known as the LaFayette Bank, at a par value of ten dollars per share.

Subject to the following conditions:

First. That, when the new bank is opened it shall have a capital stock of not less than $100,000.

Second. We further agree that the remainder of our deposit shall be available to us only in equal monthly installments of ten per cent, but nothing in this agreement shall prevent any new deposits made by us from being available to us in the usual manner of banking practice.

All of which is subject to the approval of the Corporation Commission.

The foregoing agreement is signed after full knowledge and understanding of its contents."

The petitioner, the Corporation Commission, duly excepted to the order made by Judge Sinclair, and appealed therefrom to the Supreme Court.

*I. M. Bailey and Robert H. Dye for appellant.*

CONNOR, J.  Chapter 113, Public Laws of North Carolina, session 1927, now C. S., 218(c), is entitled "An act to amend section 218(c) of Volume 3 of the Consolidated Statutes, relating to the method of liquidating banks."  It is provided by subsection 22 of said act that "no bank created under the Banking Act, or the Industrial Banking Act, and under the supervision of the Corporation Commission, shall be liquidated in any other way or manner than that provided herein."  All banks, doing business under the laws of this State, whether public or private, are by statute under the supervision and general control of the Corporation Commission, C. S., 1035, subsection 7.  Therefore, no State bank can be liquidated, voluntarily or involuntarily, otherwise than as provided by this statute.  C. S., 218(a), providing for the voluntary liquidation of a bank, insofar as it is in conflict with the statute is superseded by its provisions.

For the purpose of liquidation, either voluntary or involuntary, the Corporation Commission is authorized and empowered by the statute, either upon its own initiative, in certain cases (subsection 1), or pursuant to resolution of a majority of the board of directors of the bank (subsection 2), to take possession of the assets and business of any bank doing business in this State, and subject to its supervision and general control.  In either case the Corporation Commission, upon taking possession of the assets and business of any bank, is authorized, through the Chief State Bank Examiner, or through its duly appointed agent, to convert its assets, real and personal, into money, by the collection of all debts due the bank, or with the approval of the judge of the Superior Court for the district in which the bank has its principal place of business, by the sale of its property, real or personal, subsection 7.  All funds belonging to the estate of the bank, and collected by the Commission shall be deposited from time to time in such bank or banks as the Commission shall select, and shall be subject to the check of the Chief State Bank Examiner, in the name of the Corporation Commission, subsection 15.  Claims of depositors or other creditors of the bank must be filed with the Corporation Commission within the time specified by the Commission, which shall be not less than ninety days from the date of notice given by publication in a newspaper pub-

lished in the county in which the bank was doing business at the time the Commission took possession of its assets and business, subsection 10. At any time after the expiration of the date fixed by the Chief State Bank Examiner, or by the duly appointed agent of the Commission, for the presentation of claims against the bank, the Commission may declare, and out of the funds on hand, after paying expenses and debts which have priority, shall pay dividends to the depositors and other creditors of the bank whose claims have been allowed by the Commission. Dividends shall be declared and paid when and as often as the funds on hand, subject to the payment of dividends, are sufficient to pay ten per cent on all claims entitled to share in such dividends, subsection 14. When the assets of the bank have been fully administered, the Corporation Commission is required by the statute to file in the office of the clerk of the Superior Court of the county in which the proceeding for the liquidation of the bank is pending, a full and complete report of all its transactions in said proceeding. Upon the filing of this report, the Corporation Commission shall be discharged from all further liabilities by reason of the liquidation of the bank, subsection 18. In the event any funds or assets belonging to the bank remain in its hands, after the payment of all expenses and all claims against the bank, provision is made in the statute for the payment of said funds or the delivery of said assets to an agent or agents of the stockholders to be distributed among them, according to their respective interests, subsection 19. The statute provides in detail for a full and complete liquidation of the assets of a bank which have been taken over by the Corporation Commission, pursuant to its provisions; to the end that the rights of depositors and other creditors, and of stockholders may be fully protected. Under the provisions of the statute, the Corporation Commission is a statutory receiver, with full authority to liquidate State banks, whose assets and business have been taken into its possession for that purpose. When the Corporation Commission has taken possession of the property, real or personal, of a State bank, the statute contemplates that it shall retain possession of said property, until the Commission has fully administered the same, in accordance with its provisions, and in order to accomplish its purposes.

With respect to the sale of the property of the bank, real and personal, which has come into the possession of the Corporation Commission by virtue of the statute, it is provided in subsection 7 that the Chief State Bank Examiner, or the duly appointed agent of the Commission "by motion in the pending action (see subsection 3) and upon authority of an order of the presiding or resident judge of the district, may sell, compromise, or compound any bad or doubtful debt or claim, and may upon such order, sell the real and personal property of such bank on

such terms as the order may provide or direct, except that, where the sale is made under power contained in any mortgage or lien bond, or other paper wherein the title is retained for sale and the terms of sale set out, sale may be made under said authority. Upon the motion made, the bank or any person interested, may be heard, but the judge hearing the motion, shall enter his order as in his discretion will best serve the parties interested."

When a sale of property, real or personal, belonging to the estate of the bank, and in the possession of the Corporation Commission, has been made, under an order of the judge of the Superior Court, having jurisdiction, the purchase money must be paid to and collected by the Corporation Commission or by the Chief State Bank Examiner, or by the duly appointed agent of the Commission. When thus collected, the money paid for the property sold becomes a part of the fund in the hands of the Commission, available for the payment of its expenses, incurred in the proceeding, and of dividends to depositors and other creditors. The judge is without power under the statute to authorize the Corporation Commission to surrender possession of or to transfer said property to a third party, without a provision in his order that the purchase money for the property shall be paid to and collected by the Corporation Commission, or by the Chief State Bank Examiner, or by the duly appointed agent of the Commission.

In the instant case, there is a proposal by interested parties in the city of Fayetteville that they will purchase the assets of the LaFayette Bank and Trust Company, now in the possession of the Corporation Commission for purposes of liquidation, under the statute, transfer same to a bank to be organized by them, and pay to each depositor or other creditor of the LaFayette Bank and Trust Company a certain percentage of his claim. There is no error in the order of Judge Sinclair denying the petition of the Corporation Commission for an order authorizing the Commission to accept this proposal. By its terms, the Corporation Commission would be relieved of any further duty to the depositors, creditors, or stockholders of the LaFayette Bank and Trust Company, and would be deprived of any power to protect their interests in the property which it had taken into his possession under the provisions of the statute.

We do not discuss or decide the question presented on this appeal as to whether under the provisions of subsection 7, C. S., 218(c), the judge has the power to authorize a sale of the assets of a bank, in the possession of the Corporation Commission for purposes of liquidation, in bulk. It would seem, however, that as the statute provides that the judge shall make such order as in his discretion will best serve the parties interested, he has the power to authorize such sale. When an order

has been made by the judge in the exercise of the discretion vested in him by the statute, his order is not reviewable by this Court, on appeal, except upon the ground that there has been an abuse of such discretion.

As we find no error in the order of Judge Sinclair, the same is Affirmed.